UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMMAD MOINUDDIN AHMED FAROOQUI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | Civil Action No. 23-1081 (TSC) |

MEMORANDUM OPINION

Plaintiffs are citizens of Pakistan currently residing in the United Arab Emirates. Compl. ¶ 1, ECF No. 1. Their complaint seeks declaratory and mandamus relief to remedy allegedly unlawful delay in the adjudication of their U.S. visa applications. Defendants have moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss, ECF No. 5 ("MTD"). For the reasons set forth below, the court will GRANT Defendants' Motion and dismiss this action.

I. BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign nationals who seek to enter the United States on a permanent ("immigrant") or temporary ("nonimmigrant") basis. 8 U.S.C. § 1101 *et seq.* Within that framework, the "L-1A" nonimmigrant visa category permits multinational business to sponsor visas for their executives or managers to temporarily continue their work for that business or its affiliates in the United States. 8 U.S.C. § 1101(a)(15)(L). The visa also permits the manager or executive to be joined by their spouse and minor children. *Id.*

According to the Complaint, Plaintiff Hammad Moinuddin Ahmed Farooqui's employer petitioned for an L-1A visa on May 20, 2021. Compl. ¶ 3. The visa petition sought entry for him and his family—the remaining plaintiffs in this case. *Id.* ¶¶ 1, 3. On February 7, 2022, the U.S. Department of State conducted a visa interview with Plaintiffs, but "refuse[d]" their visa applications. *Id.* ¶ 7. A visa refusal

> means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused . . . at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case . . . , she or he will convey to the applicant whether the applicant is required to provide any further documentation or information, or whether the case requires additional administrative processing.

*Administrative Processing Information*, U.S. Dep't of State.[1] Since their interview, Plaintiffs have requested but not received "information as to when, if ever, the visas may be issued," learning only that the applications remain in "administrative processing." Compl. ¶¶ 8, 19, 28.

Plaintiffs claim that the subsequent delay in further government action on their applications violates the Administrative Procedure Act ("APA") and Fifth Amendment Due Process Clause. *Id.* ¶¶ 16–32. They seek an order "mak[ing] a determination on" their visa applications, "or alternatively . . . compelling Defendants to adjudicate" them. *Id.* at 2–3 (unnumbered introductory paragraph). In addition, Plaintiffs ask the court to invalidate and prohibit enforcement of the Controlled Application Review and Resolution Program ("CARRP"). *Id.* at 7–8 (Request for Relief). CARRP "prohibits USCIS field officers from

---

[1] *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html. Courts in this jurisdiction have frequently taken "judicial notice of information posted on official public websites of government agencies." *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

approving an application with a potential 'national security concern.'" *Id.* ¶ 22.  Plaintiffs allege that CARRP "brands innocent, law-abiding individuals, like the Plaintiffs—none of whom pose a security threat—as "national security concerns" on account of innocuous activity and associations, and characteristics such as national origin." *Id.* ¶ 23.  "On information and belief, . . . Defendants are intentionally delaying a decision on these applications pursuant to the CARRP program . . . due to Plaintiffs being from a predominantly Muslim country." *Id.* ¶ 21.

Defendants make six arguments for dismissal.  First, that the "State Department, the Secretary of State, and the Charge d'Affaires for the U.S. Mission to the United Arab Emirates" are improper defendants "because either they have no role in adjudicating the visa refusal or they completed their role in the process." MTD at 3.  Second, that challenges to the refusal of visa applications are barred by the consular nonreviewability doctrine.  *Id.* at 4–8.  Third, that Plaintiffs' claims cannot succeed because the law does not provide a "clear duty to schedule a visa interview, to adjudicate any specific visa application, or to re-adjudicate a visa after it has been refused." *Id.* at 10; *see id.* at 8–12.  Fourth, that the alleged delay here is not unreasonable. *Id.* at 13–21.  Fifth, that Plaintiffs have no Due Process rights to a visa or the procedures for obtaining one.  *Id.* at 21–22.  And finally, that Plaintiffs' challenge to CARRP is misplaced and implausibly alleged.  *Id.* at 22–23.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish that the court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir.

2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, the court may consider "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." *Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  But as with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted).  That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation omitted).

### III.  ANALYSIS

Plaintiffs have not plausibly alleged that any delayed adjudication of their visas violated a clear statutory duty.  Their Due Process claim and challenge to CARRP also fail.  Accordingly, the court need not decide whether consular nonreviewability applies in this case.

### A. Improper defendants

At the outset, the court rejects Defendants' arguments that Plaintiffs lack standing to bring claims against the State Department, the Secretary of State, and the Charge d'Affaires for the U.S. Mission to the United Arab Emirates.  MTD at 3–4.  The redressability requirement of

standing turns on "whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996). Defendants argue that "action on visa applications" is "the exclusive province" of consular officers. MTD at 4. And it is true that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).

Defendants do not misquote the law governing final visa decisions. But "[c]ontrol over a consular officer's visa *determinations*—that is, her decisions to 'grant, deny, or revoke immigrant and non-immigrant visas,' is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (quoting *Saavedra Bruno*, 197 F.3d at 1156) (formatting modified). "Here, the interest that Plaintiffs hope to protect is their interest in having their applications *adjudicated* in a reasonable time, not necessarily granted in a reasonable time." Pls.' Opp'n to Defs.' Mot. to Dismiss at 10, ECF No. 6 ("Opp'n"). And Defendants do not contend that the State Department, its Secretary, or the Charge d'Affaires for the U.S. Mission to the United Arab Emirates lack authority to "direct[] consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time,'" nor have they identified any authority supporting such a defense. *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)). Accordingly, Defendants have not justified their dismissal.

**B. Consular nonreviewability**

Defendants also move to dismiss this case under the consular nonreviewability doctrine. That doctrine "shields a consular official's decision to issue or withhold a visa from judicial

review, at least unless Congress says otherwise." *Baan Rao*, 985 F.3d at 1024. Defendants argue that a consular officer's "refusal" of a visa application always constitutes a nonreviewable "withholding of a visa." MTD at 5. However, several courts in this district have rejected that argument, concluding that such "refusal" may be reviewable where it appears to be "merely provisional, with a final decision yet to come"—*e.g.*, because "administrative processing" remains ongoing. *Al-Gharawy*, 617 F. Supp. 3d at 16; *see also Akrayi v. United States Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023). That is the status Plaintiffs allege here: "[T]he visa application filed by Plaintiffs [is] currently undergoing 'administrative processing.'" Compl. ¶ 19.

The court need not decide this issue, though. "Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao*, 985 F.3d at 1027. And because the court concludes that there are independent reasons to dismiss Plaintiffs' claims, *see infra* Sections III.C.–E., it need not decide whether consular nonreviewability applies in this case, *see Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts may assume without deciding that plaintiffs' statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (internal quotation omitted)); *Zandieh v. Pompeo*, No. CV 20-919, 2020 WL 4346915, at *4 (D.D.C. July 29, 2020) ("[B]ecause it finds that the delay asserted here is not unreasonable," the court "need not decide whether plaintiffs' claims are reviewable." (internal quotation omitted)). The court therefore expresses no opinion on this ground for dismissal.

C. **Unreasonable delay**

Plaintiffs' first claim must be dismissed because they have failed to plausibly allege an unreasonable delay as a matter of law. That conclusion is guided by the so-called "*TRAC* factors," as set forth in *Telecommunications Research & Action Center v. FCC (TRAC),* 750 F.2d

70, 80 (D.C. Cir. 1984).  Both Defendants and Plaintiffs resist the *TRAC* factors' applicability here—albeit for different reasons.  But their arguments mistake the law.

Defendants argue that "[a]bsent an independent statutory duty, the *TRAC* factors themselves do not decide whether an agency has violated a clear duty to act for purposes of mandamus jurisdiction."  MTD at 12.[2]  In other words, because Plaintiffs seek mandamus relief, to establish jurisdiction they "must identify a clear 'non-discretionary act,' or 'a clear duty to act[,]' that the law compels an agency to take"—and if they do not, "an agency's delay to act, however long, cannot be unlawful or unreasonable."  MTD at 10 (first quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); then quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).  But the D.C. Circuit has squarely rejected that reasoning, explaining that "depending on the circumstances," the *TRAC* factors themselves may still govern the initial mandamus inquiry, *American Hospital Association*, 812 F.3d at 190:

> For example, in situations where plaintiffs allege that agency delay is unreasonable despite the absence of a specific statutory deadline, the entire *TRAC* factor analysis may go to the threshold jurisdictional question: does the agency's delay violate a clear duty?

*Id.*  Here, there is no dispute that Plaintiffs have not alleged the violation of a specific statutory deadline.  *Compare* MTD at 16 (discussing *TRAC* Factors 1 and 2), *with* Opp'n at 13–14 (same).  As a result, the *TRAC* factors appropriately govern the court's evaluation of whether it has mandamus jurisdiction over Plaintiffs' claim of unreasonable delay.

---

[2] "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Because Plaintiff does not satisfy the first two parts of this test, the court does not reach the third.

For their part, Plaintiffs contend that "Defendants' motion to dismiss should be denied because Plaintiffs have not had the opportunity to engage in meaningful discovery and develop a sufficient record of evidence that would allow this Court to make an informed decision as to the unreasonableness of Defendants' delay." Opp'n at 16 n.1. And to be sure, deciding a claim of unreasonable delay is a "nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). "Nevertheless, the *TRAC* factors have been applied at the motion to dismiss stage to determine whether a plaintiff's complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Khan v. Bitter*, No. CV 23-1576, 2024 WL 756643, at *4 (D.D.C. Feb. 23, 2024) (internal quotation omitted) (formatting modified). That is because, sometimes, the "plaintiff's claimed delay in the adjudication of [a] visa is not unreasonable as a matter of law under the [*TRAC*] factors." *Id.* at *3 (internal quotation omitted); *see, e.g.*, *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) ("An analysis of the TRAC factors as applied here leads this Court to the same conclusion—that the twenty-five-month delay at issue here is not unreasonable as a matter of law, given the circumstances."). As explained below, the court reaches that conclusion here.

Having concluded that it is appropriate to apply the *TRAC* factors here, the court considers each of them:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotations omitted). "[T]hese factors function not as a hard and fast set of required elements, but rather as useful guidance as to whether a delay is 'so egregious as to warrant mandamus.'" *Am. Hosp. Ass'n*, 812 F.3d at 189 (quoting *TRAC*, 750 F.2d at 79).

    i.    Factors 1 and 2

"The first factor is the most important TRAC factor, and is typically considered together with the second TRAC factor." *Arab v. Blinken*, 600 F. Supp. 3d 59, 69 (D.D.C. 2022) (internal quotation omitted). Their joint focus is "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). In this case, "no statutory or regulatory timeframe [exists] within which the State Department or a consular officer must re-adjudicate visa applications." *Khan*, 2024 WL 756643, at *4 (quotation omitted). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" for the reasonableness of a delay. *Id.* (quotation omitted). "Even though courts have drawn no bright lines to determine reasonableness, district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Id.* (formatting modified). By contrast, courts in this district "consistently have held that two or three years does not constitute an unreasonable delay." *Tekle v. Blinken*, No. 21-CV-1655, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022); *see, e.g.*, *Akrayi*, 2023 WL 2424600, at *3 ("The delay in [visa] processing, almost three years, does not reach the length that courts have found unreasonable."); *Sarlak v. Pompeo*, No. CV 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (delay of about two years did not "require judicial intervention").

The first and second factors favor Defendants. The delay in this case began in February 2022, when Plaintiffs' visa applications were refused without any subsequent action. Compl.

¶¶ 6–7. Plaintiffs filed their Complaint about fourteen months later, in April of 2023. Even if the court considers the delay period as running until the issuance of this Opinion, it amounts to about twenty-five months. *See, e.g.*, *Mahmood v. U.S. Dep't of Homeland Sec.*, No. CV 21-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021). That makes the delay of a length typically considered reasonable in this district.[3] And while Defendants fail to provide any specific reasons for this delay, which weakens their position, they do refer generally to the "backlog of visa applications, the competing demands on involved personnel," and the "scarce resources" that attend decisions about how to "prioritize the processing of visa applications" in this context. MTD at 15 (quotations omitted). Those constraints, consistent with what courts have recognized in other cases, make the first and second *TRAC* factors weigh for Defendants.

    ii.    <u>Factors 3 and 5</u>

The third and fifth *TRAC* factors are also often considered together; they "examine 'the nature and extent of the interests prejudiced by the delay,' including whether 'human health and welfare' might be implicated." *Khan*, 2024 WL 756643, at *5 (quoting *TRAC*, 750 F.2d at 80). The Complaint contains only bare allegations of the harm to Plaintiffs' interests: It states that the delay "has produced tremendous hardship" for them and has denied "them ability to come to the U.S. to fulfill the purpose of the non-immigrant visas." Compl. ¶¶ 8, 32. Plaintiffs do elaborate somewhat in their briefing, stating that the "delay has hindered [Hammad Moinuddin Ahmed Farooqui's] professional growth and deprived him of opportunities for development and advancement," and that "his family have had to put much of their personal lives on hold as they await the adjudication of their visas." Opp'n at 15. But "[i]t is well settled law that a plaintiff

---

[3] The consensus of case law in this district is not meaningfully altered by Plaintiffs' citations to three cases from 2007 in the Northern District of California, which considered more than two years of unexplained delay unreasonable. *See* Opp'n at 13.

cannot amend its complaint by the briefs in opposition to a motion to dismiss." *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 121 (D.D.C. 2018) (quotation omitted).

In any event, the hardships that Plaintiffs articulate in their briefing are not generally afforded much weight in this context. Plaintiffs do not allege harms to human health or welfare, such as "current and actual danger to the health of the individual and the health of their progeny," *Alshawy v. United States Citizenship & Immigration Services*, No. CV 21-2206, 2022 WL 970883, at *6 (D.D.C. Mar. 30, 2022), or "[p]rolonged separation from a spouse, fiancé, or other immediate family member," *Khan*, 2024 WL 756643, at *5. Consequently, while the court recognizes that there are burdens associated with Plaintiffs' lives being put "on hold" while they wait, those more ordinary burdens are shared by everyone awaiting visa adjudication and "[a]t most . . . weigh only slightly in support of finding an unreasonable delay." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). Similarly, economic harms such as postponed career opportunities are more "tolerable" costs of delay than risks to health or welfare. *TRAC*, 750 F.2d at 80. The third and fifth factors thus add little weight to Plaintiffs' side of the scale.

   iii.   <u>Factor 4</u>

The fourth *TRAC* factor favors Defendants. They correctly observe that, in effect, the result that Plaintiffs seek here "would be merely to expedite the consideration of a [their] application ahead of others." MTD at 18. Although that result might be less disruptive than a permanent change to Defendants' policies, it could still undermine their priorities. "The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991). "Processing capacity is presently a zero-sum game, granting plaintiffs' request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. CV 21-1618, 2022 WL

493082, at *4 (D.D.C. Feb. 16, 2022) (quotation omitted).  As a result, "[r]elief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate when no net gain in such adjudications is achieved." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quotation omitted).  Plaintiffs offer no reason to depart from that general rule here.  Accordingly, this factor weighs in Defendants' favor.

    iv.    Factor 6

The sixth *TRAC* factor observes that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"  *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  Plaintiffs concede, however, that they "do not allege that Defendants' delay was caused by bad faith."  Opp'n at 16.  This factor is therefore inapplicable.

\*    \*    \*

On balance, the *TRAC* factors favor Defendants.  Under the first and second, the length of Defendants' delay is within the range of time that courts have consistently declined to consider unreasonable as a matter of law.  Under the third and fifth, Plaintiffs have not alleged that the delay has caused any significant harm to human health or welfare.  And under the fourth factor, the relief Plaintiffs seek would disrupt the government's priorities and allow Plaintiffs to jump the queue of similarly situated people awaiting further action on their visa applications.  The court acknowledges the difficulties that Plaintiffs face because of the delay.  But as a matter of law, the court cannot conclude that Plaintiffs have "allege[d] specific facts that indicate unreasonable delay," Opp'n at 14, a necessary threshold criterion for establishing this court's mandamus jurisdiction.  Accordingly, Plaintiffs' unreasonable delay claim must be dismissed.

D. **<u>Due Process violation</u>**

Plaintiffs also claim that Defendants' allegedly unreasonable delay constitutes a violation of the Due Process Clause of the Fifth Amendment. But whether styled as a substantive or procedural due process claim, this contention cannot succeed. "A noncitizen does not have a right to a visa, or 'a constitutionally-protected interest in the procedures by which such visas are obtained.'" *Khan*, 2024 WL 756643, at *8 (first citing *see Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); then quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011)). Likewise, the Supreme Court

> long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. . . . He therefore has no entitlement to procedural rights other than those afforded by statute.

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020). Because Plaintiffs have not plausibly alleged an unreasonable delay in violation of any of Defendants' statutory duties, *see supra* Section III.C, this claim must be dismissed as well.

E. **<u>Challenge to CARRP</u>**

Finally, Plaintiffs have failed to adequately allege standing to challenge CARRP. "While plaintiffs challenging CARRP need not have 'concrete proof that they were subjected to the program to survive a motion to dismiss' for lack of standing, they must raise a plausible inference they are being injured by CARRP." *Akrayi*, 2023 WL 2424600, at *5 (quoting *Giliana v. Blinken*, 596 F. Supp. 3d 13, 23–24 (D.D.C. 2022)). Accordingly, "'mere speculation' is insufficient to allege concrete injury from CARRP." *Id.* (collecting cases). Here, Plaintiffs "do[] not offer any factual allegation raising a plausible inference that CARRP is being applied to [them]—the mere presence of a delay is not enough," nor is their citizenship in a majority Muslim country. *Id.* In any event, CARRP is administered by the Department of Homeland

Security, not Defendants.  *See* MTD at 22–23 (collecting cases recognizing that fact).  Plaintiffs fail to allege how or why Defendants could or would have delayed their visa applications pursuant to CARRP.  Because it lacks allegations that would plausibly establish that foundation, this challenge must necessarily be dismissed as well.

## IV.   CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 5.  A corresponding Order will accompany this Memorandum Opinion.

Date: March 19, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge